956 So.2d 1242 (2007)
R.S., Petitioner,
v.
DEPARTMENT OF CHILDREN AND FAMILIES, STATE OF FLORIDA; R.S., the father; Guardian Ad Litem Program, Respondents.
No. 4D07-1423.
District Court of Appeal of Florida, Fourth District.
May 23, 2007.
*1243 William W. Booth, Michelle Hankey, and James Walsh, Legal Aid Society of Palm Beach County, Inc., West Palm Beach, for petitioner.
Jeffrey Dana Gillen, West Palm Beach, for respondent Department of Children and Families.
Samuel T. Marshall, II, of Pickett Marshall & Glassman, P.A., West Palm Beach, for the Father.
Patricia M. Propheter, Orlando, for respondent Guardian ad Litem Program.
FARMER, J.
The Legislature has established the following policy to govern the progress of proceedings for the termination of parental rights:
The Legislature finds that time is of the essence for establishing permanency for a child in the dependency system. Time limitations are a right of the child which may not be waived, extended, or continued at the request of any party except as provided in this section.
§ 39.0136(1), Fla. Stat. (2006). The statute specifies that:
A continuance or extension of time may be granted only for extraordinary circumstances in which it is necessary to preserve the constitutional rights of a party or if substantial evidence exists to demonstrate that without granting a continuance or extension of time the child's best interests will be harmed.
§ 39.0136(3). The unavailability of evidence does not constitute "extraordinary circumstances" unless the party establishes that the evidence is material and the party has exercised due diligence to obtain the evidence. § 39.0136(2)(b)(1). The statute limits any particular continuance "to the number of days absolutely necessary to complete a necessary task in order to preserve the rights of a party or the best interests of a child." § 39.0136(4). Finally the statute also places an outer limit of 60 days for continuances within any 12-month period.
In this case the child has filed a petition for writ of certiorari contesting the trial court's continuance of the trial to terminate the father's parental rights. The trial court set trial for March 15, 2007. On the day of trial the father moved for a two- to four-weeks continuance, his attorney saying that he simply needed more time for preparation as a result of witness names the father provided only that morning. *1244 The witnesses would testify about the father "following through" in drug abuse services he was receiving. The father had no explanation as to why he waited until the morning of trial to provide these names to his counsel. DCF objected to the continuance.
In assessing the father's showing in favor of a continuance, the court explained:
"This motion may not merit granting a continuance because in order to grant a continuance, the Court should be concerned about whether or not good cause exists. There is no explanation here as to why this information was not gathered. The moving party appears to want to remain silent on that. But when I asked the question I got no response. I'm not sure whether or not this information is really material to the resolution of the case.
"But if I hear this trial and his parental rights are terminated and this case goes to the DCA, I really would hate to see a case reversed on something that could have been cured, given another two weeks to gather the information and eliminate this issue so that if and when this child is adopted, at least this type of an issue won't come back to haunt us. I have seen cases reversed because the Court didn't grant a continuance. . . . "
The court added that it thought that DCF would not be prejudiced. The court questioned what harm would arise from granting a two week continuance "to avoid a possible appellate issue." DCF pointed out that the court's calendar was so full that in two weeks this case may not be reached. The court noted that time was available on May 31st. The court did not mention the fact that this would amount to a continuance of ten weeks beyond the current trial date.
Counsel for the child objected and thought that nothing would stop the father from seeking another continuance then. The court said pointedly that he was not convinced there was good cause shown for the continuance but explained:
[I]f the child was in a situation where we needed to move to do something or if you were going to lose some evidence, lose your ability to present something, something of that nature, on balance, I think that would be enough, but if we are just talking about waiting, I'm more than inclined to do that than to take a chance with a two year old with a family ready, willing and able to adopt him. So you don't have to argue.
The court thereupon entered an order granting the continuance and setting trial for May 31st. The length of the continuance granted by the order amounted to 77 days. We granted the child's petition without explanation, promising an opinion in due course. This is our opinion.
None of the above statutory requirements have been met here. There was no attempt by the father to show that without a continuance the child's best interests would be harmed. Instead the court asked whether DCF would be harmed. The circumstances were not extraordinary  in fact they are quite ordinary. The father gave no reason for failing to obtain the witnesses, established no diligence. The court doubted that the witnesses' testimony would be material. Nothing indicated the number of days absolutely necessary to secure the witnesses' testimony. Even if all these requirements had been met, the total time granted by this order exceeds the 60-day limit, and there is nothing showing why an extension beyond the 60-day limitation could be justified. For any of these reasons, it was error to grant the continuance.
The power to control the timing of trial and to grant continuances has long been *1245 understood in civil litigation as almost wholly within the control of trial judges. Correspondingly, appellate judges customarily defer to trial judges in this regard because they are on the scene and are best acquainted with considerations of managing local trial court time and resources. But in this class of cases the state has assumed principal control of the matter by statutory law. The state has established a strong policy of ending a dependent child's uncertainties and achieving a permanent placement within one year. Terminating the rights of parents and completing the adoption of minor children involves civil proceedings for which the state has erased the customary laissez-faire policy allowing trial judges to control the timing of these trials.
The statute in question was adopted only last year. See Chapter 2006-86, Laws of Florida. The amendments to chapter 39 made by this legislation were intended "to conform [chapter 39] to the federal Adoptions and Safe Families Act (ASFA) [P.L. 105-89] in three major areas." Florida Staff Analysis, S.B. 1080 (March 17, 2006). "As a prerequisite to accepting federal funding through Titles IV-B and IV-E of the Social Security Act, states were obligated to amend state legislation to bring it into compliance with ASFA." Id. One of the three major purposes was to have chapter 39 include express "time periods (shortened from 18 months to 12 months) to finalize a permanency plan, a new requirement for permanency hearings. . . ." Id. Section 39.0136 was specifically intended "to outline the time limitations applicable to dependency cases." It is clear from the statutory text that trial judges were given very limited power to alter the time limitations specified by the Legislature. By this opinion we hope to convey the importance of these statutory changes and to clarify the new limitations on trial court discretion in the matter of continuances in proceedings to terminate parental rights.
We also make clear that the trial court's order is a departure from the substantial requirements of law that cannot possibly be remedied in a plenary appeal after a final judgment has been entered. Nothing we could do on final appeal could restore the child's right to have the issue of termination determined within the time specified by this statute. In fact, unless we grant extraordinary review, there is effectively no way for appellate courts in this state to review and correct trial court orders violating this important policy in the statutory scheme for terminating parental rights and permanent placement of children with adoptive parents. Consequently we have no hesitation in finding that the requirements for extraordinary review by certiorari have been met. See Martin-Johnson v. Savage, 509 So.2d 1097, 1099 (Fla.1987) (nonfinal order for which no appeal is provided by statute will be reviewed by certiorari only where order departs from the essential requirements of law and causes material injury to petitioner throughout remainder of the proceedings below, effectively leaving no adequate remedy on appeal); Globe Newspaper Co. v. King, 658 So.2d 518, 520 (Fla.1995) (where plenary appeal would not restore substantive litigation right granted by statute appellate courts should grant certiorari if party demonstrates that requirements of statute have not been complied with; no conflict with Martin-Johnson shown by recognizing requirements mandated by statute); Kraft General Foods Inc. v. Rosenblum, 635 So.2d 106, 110 (Fla. 4th DCA 1994) (certiorari proper where refusal to grant extraordinary review of order would effectually render particular statutory right mythical).
*1246 The trial judge's decision in this case is contrary to this statute in the particulars detailed in this opinion. Our order granting certiorari directed the trial judge to begin trial in this case forthwith. We are advised that trial began within a few days after our order was received. We commend the judge in this regard.
Certiorari granted; order quashed.
WARNER and TAYLOR, JJ., concur.